Good morning. Good morning, Your Honor. I'm Kathleen Shea on behalf of the appellant, Christopher Crawford. If I could reserve five minutes for rebuttal. Thank you. Keep your eye on the clock as well. I'll try to help you out. I will. Fundamental questions about what was required under the First Amendment arose in Mr. Crawford's trial, and these questions were decided by the district court without the benefit of the Supreme Court's decision in Counterman, leading to multiple errors and Mr. Crawford's conviction under a cyber-stalking statute that is facially invalid. I would like to begin by talking about how the jury instructions in this case violated the First Amendment. The two convict instructions in Mr. Crawford's case for both cyber-stalking and interstate threat have the same errors. Both jury instructions failed to comply with Black and failed to comply with Counterman. in terms of how the jury should evaluate a true threat. The interstate threat charge, of course, actually uses the word threat. As to the cyber-stalking charge, the government alleged Crawford had committed cyber-stalking by harassment or intimidation. Harassment was defined in part by threatening. So when defining threat for the jury, as to both instructions, the government was obligated first, under Black, to prove that the threat put Bose in fear of bodily harm or death, and second, under Counterman, to prove that Crawford made that threat recklessly. That is, he consciously disregarded a substantial risk that his communications would be viewed as threatening violence. The jury instructions did not do this. They were both missing these critical constitutional elements. For this reason, the court should reverse. Now, I know that this court has had the opportunity to look at instructions in another case. In the briefing, there is the case Emmer that is talked about post-Counterman. And in that case, the court looked at the definitions of intimidation or threat, and determined that the definition of intimidation or threat provided to the jury in that case was acceptable, because it included both the mental state and the objective reasonable person standard. And as I discussed in the briefing, this case is different than Emmer. In that case, it was very clear that the court was providing the definition to the jury, both as to intimidation or threat. It numbered each of the... Let me interrupt you for just a second. I'm just going to read the instruction, the definition of a threaten. Threaten means to communicate a serious statement expressing an intention to inflict injury immediately or in the future. I'm having trouble understanding what's wrong with that. Okay. Yes. So our argument is that what's wrong with that is twofold. One, the fact that it does not indicate to the jury under Counterman that Mr. Crawford had to make the threat recklessly. And two... What's recklessly even mean? Recklessly, I mean, he's doing it intentionally. So what's recklessly add to that? Well, the difference in Mr. Crawford's case than, for example, in Emmer, is that here, when they're defining the term threat, they're not including intent in the same way. So the definition just says, for purposes of these instructions, to threaten means to communicate a serious statement expressing an intention to inflict injury immediately or in the future. And then talks about for a statement to be a threat, the statement must have been made under such circumstances that a reasonable observer would understand it as a serious expression of an intention to inflict injury. And so what he says is, if I end up homeless because of your BS, you will not survive my homelessness, I swear it. Sounds like a threat to me. Well, the jury had to make that determination, and the jury had to make a determination about whether it was a threat pursuant to what is required for a true threat under black encounterment. So, for example, in this statement, in this jury instruction, the jury was not instructed as to true threat because, although you see that language for intimidate, and, for example, when it talks about intimidation at ER 10, the intent to intimidate means to act with the specific purpose, intent or purpose of placing the victim in fear of bodily harm or death. And then harassment gives sort of a circular definition that sends you back to the definition of intimidation, which, again, is bodily harm or death. But when you get to threat, that's no longer required. Now there's just merely a requirement that the jury find injury, not that the jury find bodily harm or death. That is only under intimidation, or if you take harassment to go back to intimidation, you can also get to harassment that way. Ms. Shea, on that point, essentially your argument is that Calverman, the Supreme Court's opinion in 2023, specifically noted that in terms of a threat, it must be established that the defendant had subjective intent to threaten, correct? And your challenge there, following the response to Judge Fletcher's question, is that you feel that the cyberstalking jury instruction did not include a subjective element of true threat. That's your argument, right? Yes, as to the definition. The instruction that I understand was given, according to the record, in terms of the matter of intent to intimidate, it says regarding the first element, intent to intimidate means to act with the intent or purpose of placing the victim in fear of bodily harm or death. Intent to harass means to act with the specific intent or purpose of distressing the victim by threatening, intimidating, or the like. For the purposes of these instructions, to threaten means to communicate a serious statement expressing an intention to inflict injury immediately or in the future as distinguished from idle or careless talk, exaggeration, or something said in a joking manner. And then for a statement to be a threat, the statement must have been made under such circumstances that a reasonable observer would understand it as a serious expression of an intention to inflict injury. That's the instruction that was given. And it seems to me that the district court did, in fact, even before Counterman, in compliance with Counterman, factor in subjective intent. So I don't understand where that jury instruction on the matter of intimidate, following up on your earlier response, where that did not in any way consider the subjective element of true threat. Well, because in this case, unlike in Emmer, where they're very clear that here you're evaluating speech and there are two parts to this, there is the mens rea and the objective, reasonable person standard. That is not clear when you're reading through these instructions, and it does not provide the intent that is necessary under Counterman because... Well, you're saying that essentially you're saying it was error to include an objective component in it, so the instruction had to be limited to just the subjective component? I'm saying that it was... Because the district court here did both, both an objective and a subjective component that was embedded in the jury instruction. But our position is that the actual definition of threat did not include that, and that by not including that, they have negated any intent that you could read into it from the rest of the instruction. And in addition to that, even if this court were to find that this instruction properly complies with the intent, it still does not... It still does not properly instruct the jury on bodily harm or death. And that is the Black violation. So this instruction still does not comply with Black because when you read this instruction, it allows the jury to find... Or it instructs the jury they must find bodily... A fear of bodily harm or death as to intimidation or potentially harassment, if you get back to intimidation, through harassment, but not once you get to threat. So it's not instructing the jury properly as to true threat. Let me ask you about your Second Amendment challenge because, as I'm sure you know, there's quite a few Second Amendment challenges pending, and I'm trying to figure out... I mean, this seems to be on the easier end of the spectrum of cases that we're dealing with. And you may know we're holding a number of cases so that we can just sort of figure out which panel's got priority in the exact framework. I'm not sure we need to do that in this case because that restriction was imposed as part of his sentence. So do you have any thoughts on, you know, where this fits in among the spectrum of challenges that the circuit is dealing with right now? Your Honor, I mean, to that, I would say that Mr. Crawford is in a very different position than, for example, the defendant in Perez-Garcia because of the fact that there were no... He obviously had... There was nothing in this case that suggested there was an issue with firearms. But this is part of his sentence, right? Supervised release is part of the sentence. Yes, it is. And that has not been decided, but yes. And are we on... With respect to the firearms, is that plain error review? That is to say, no objection made below? You follow me? Yes, I do follow you. There was not an objection to this made below. That is correct. Thank you. Heller... You made reference in the Heller case. Heller basically involved a lifetime ban, did it not? Yes. Not a three-year period of supervised release. Heller is in a lifetime ban that we found deficient. Yes. Clearly distinguishable from the facts of this case. Right. So the scope of your challenge isn't to felon in possession, a lifetime ban. It's just to be conditioned as part of supervised release, right?  Correct. Your Honor, I guess I'd like to save the remaining time for rebuttal. All right. Thank you. Good morning, Your Honors. May it please the Court. Michael Morgan for the United States. Counsel made a brief assertion that the cyberstalking statute is facially unconstitutional. That argument is foreclosed by this Court's decision in Ossinger. Nothing in the counterman decision is clearly irreconcilable with this Court's decision in Ossinger. The statutes are just radically different. The language is different. The cyberstalking statute doesn't even use the word threat in it. So as just a pure overbreath matter, counterman has nothing to do with this case. With respect to the jury instruction, there's a debate about the standard of review that applies. I think it's pretty clear that it's plain error because the defendant is challenging the refusal to give the instruction he tendered, which was not the instruction ultimately he says he's entitled to now. The instruction tendered wanted a specific intent to harass. Counterman says you don't even need that. And in fact, he got a specific intent to harass. In these instructions, the defendant got more than he was entitled to. So that was, again, that's this Court's decision in Emmer. So you don't err by instructing the jury with a greater subjective intent, a specific intent to harass, than you would with a reckless intent to harass. So there's clearly no error, plain or otherwise, in the District Court's instructions. And the Court has teased out the appropriate language. It's, the instructions to threaten is a verb, so it's the active voice, means to communicate a serious statement expressing, again, the active voice, an intention to inflict injury immediately or in the future. So you have to, in issuing the statement, intend to communicate a threat. That is a subjective intent requirement. So if the Court has no further questions on the instructions issue, I will turn briefly to the Second Amendment issue. That's the only other issue the Court has expressed any interest in, unless the Court has questions about something else. Mr. Morgan, just let me ask you, did, with respect to the testimony about the Navy's poor history of protecting female service members and testimony about the poor history in that regard, did the government really need that evidence in this case? Well, need is a relative term, but I would say yes, because the defense was attempting to discredit the victim's testimony. Essentially, the defense wanted the jury to believe that the defendant was not afraid of Mr. Crawford. And one of the ways they were trying to do that, they were pointing to this e-mail, that the response to the threatening e-mail, which Judge Fletcher rightly perceived as clearly threatening, and she e-mailed it to the NCIS investigator saying, this is a threat. And the defense tried to spin that. NCIS doesn't always live up to the television programmers' saying, right? Yeah.   Television justice and real justice don't always match up. That's definitely true. I think we all agree with that. But what they were trying to spin that was, was like, oh, she's not even taking this seriously. But the agent testified, no, she was exasperated because she had been constantly going to the Navy and being told, you know, there's nothing we can do, which maybe that was right, maybe that was wrong, but she was basically... There's loads of evidence in this case. I'm not really... I guess my question to you is whether you really think it was necessary. This was really the only defense they had. I mean... My point is there's a great deal of evidence in terms of this, and it did... I did caused a little bit of cause about whether or not you really needed this evidence, but I don't know that it's on to the jury, but... I don't think... As far as the evidence part of it, I think it was admissible. It was admissible to rebut that particular inference they were trying to draw. As far as the statement... That's why it's 401. I guess my question is in terms of 403 and prejudice. Well, there's... That would be for plain error. They didn't object on 403 grounds. They only objected on 401 grounds. And I would... Even if you wanted to say that you could excise that one piece, it would be clearly harmless in this case, as you pointed out. The evidence of guilt is overwhelming. And the same with if you were to say that, like, the prosecutor shouldn't have referenced it in summation, notwithstanding that the defendant, in his summation, was clearly attacking the victim's credibility for this very reason. You know, you're going to have to make up your mind. Either you needed it or it was harmless. You started out saying you needed it, and now you're saying it's harmless. Well, I'm taking alternative positions. I understand that. You may be better pick. If you want me to pick, if pressed, I will say that it was harmless and not reversible plain error. That's probably a better field to go on, I think. Well, I'm certainly happy to play on that field if necessary. That's fine. Sometimes a prosecutor can get more than he or she needs. Sometimes, you know, you have to think about getting to the appellate level where do you really need this, I guess, is my point. Let's face it. Understood, Your Honor. Understood. But, again, on this record, there would be no reason to reverse on that one little error, if error there was. If the Court has no further questions about any of the other issues, we'll rest on our base. Thank you, Your Honor. We'd ask for the judgment to be affirmed.  Thank you. One thing I wanted to address, Judge Fletcher, you had asked me about the standard of review, and upon reflection, I do want to correct a misstatement, which is that, yes, it is correct as to the firearm, and also there is this question as to the jury instruction issue as well in terms of Mr. Crawford not having objected. And he did not. I'm correct in saying that. But I am not conceding that that should then be reviewed under plain error. That should still be a de novo standard. And, in part, just to point out, as to both those issues, under McAdory, there is this idea that even if the defendant does not object, when the issue is one of pure law, as the firearm is or as these jury instructions are, it's appropriate to review de novo and make a determination because, as to the jury instructions, for example, there was this intervening issue of law, and now the government has had a full opportunity to respond. As to the prosecutorial misconduct argument, first, the government overstates the evidence repeatedly, and I think this is also an issue in this case about how they were trying this case and what evidence they were permitted to use to show an actual threat, which, again, goes back to this idea of what is a true threat and what should have been permitted at trial. But, certainly, there was voluminous evidence that did not rise to the level of true threat in this case. And the government tried to, both at trial and on appeal, say, well, it all counts. And, as discussed in our briefing, that's simply not true. It does not. They needed to prove true threat in this case. The sentence that I read to you, I guess it was two sentences. Yes. Is that not a true threat? It is not a true threat because it does not indicate that they inflict injury is not the same as requiring the jury to find fear of bodily harm or death. And that matters a lot in this case because there was... Now, he says, if I end up homeless because of your B.S., you will not survive. That sounds like you might die. In the context, though, the jury was given that information in the context of the fact that this was an ongoing divorce, custody dispute, there was much anger between these two individuals. The jury would have to make that determination, but they needed to be able to do it with the correct instructions. And that... I read the instruction. I'm just reading that language.  Does that sound like a threat to kill? No. It says, you will not survive. That sounds like she's going to die. Except for, as defense counsel argued, pointed out below, that can mean many things. We don't always use the word survive in the English language to mean literally you will not survive. Well, you will not survive means you won't live, right? Yes. That is certainly one definition. I am not arguing with the court about that. But I do think that it is not... It is common for people to use that term, not meaning that anyone will actually die. And in the context here of a hotly contested custody dispute... But that, I think, becomes an argument that the defense can raise to the jury. Yes, they can, but they needed the right instructions to do it. They needed to be properly instructed on true threat. And when you get to threat in this instruction, that is not required. It was not required of the jury. So no matter what argument defense counsel was making, this instruction wrongly allowed them to decide based on evidence that she was embarrassed or upset instead of the fact that she was actually worried truly for bodily harm or death. Thank you for allowing me to go over. All right. Thank you very much, counsel. Both sides for your argument. The matter is submitted.
judges: FLETCHER, NGUYEN, Bennett